Houston v. C.G. Security Services, Mr. Calamaros. Good morning, Phil Calamaros on behalf of C.G. You'll note for the record that as soon as I saw who our panel was today I promptly threw my original argument in the trash and started over. With the cases that this panel has experienced, I think that I would like to take my time to focus on two points. And one is that in an uphill climb like this, you're faced with a question of what is a reasonable person going to decide? Because if no reasonable person would have decided this way, then it goes my way. If any reasonable person would decide the other way, I go nowhere. In this particular case, the two places where the reasonable person would have decided differently are one based on proportionality and the second based on rate. And I'll touch proportionality first. What's important about proportionality in this case is the fact that the only person who was a party here, the only person for whom a sanction was moved against, and the only person for whom a sanction was awarded was C.G. Security. I made a point of this in the objection to the magistrate's order because of the fact that it seemed like the vast majority of the time by the magistrate's recommendation was spent on criticizing counsel. She specifically articulated things for which counsel had obstructed in discovery. This was then brought up with the article judge. The article judge said, but this sanction is not based on the conduct of counsel. So then the question is, what of all of the things that had an effect on discovery, what of all of those things were attributable to this defendant, to this sanctionee? Not the way that discovery objections were put in, not the way. Very, very specific items. And when the sanction was entered, and the sanction was all of the discovery expense, that is not what a reasonable person would draw from the conduct of C.G., expressly not the conduct of the lawyer, and the outcome. Specific things about C.G. you can identify, and were identified. But it's not a reasonable draw. It is not a proportionate draw from the conduct of this individual who is very, very expressly singled out as the only person, and the only person's conduct who is sanctioned. In proportion, arguments typically are, and this court has certainly heard them, the nuclear option that is default is a very special option. Well, in terms of disproportion, I view default in this case, which was not rendered, as essentially a logarithmic disproportion. I view the sanction that was delivered as a geometric disproportion. Because it does not, and cannot, and is not drawn directly from the sole conduct of C.G. to the sanction. In my view, the reasonable decision is an arithmetic sanction, if any sanction at all. This is not a lawyer we're talking about. This is an unsophisticated small businessman. Granted, they still are in lawsuits, they're still defendants, and they still have to do their job. But to make this case into everything falls at the feet of C.G. security is entirely inconsistent with the magistrate's order, with the article judge's order. Proportion, reasonableness. The court has said before that if a decision is inconsistent with itself, that that's a suggestion, that it's not reasonable. In this case, I think that the reasonable decision is to identify what exactly was the conduct of C.G. as a party. And how did that arithmetically relate to the extra work that had to be done in discovery? That was not done here, that was suggested here, that was rejected here. And that's the difference. And I made a point to make sure that it was only C.G. who was who. And I asked the court not to sanction C.G. for things it attributes to the lawyer, but yet we see in discussion. If we took a black marker and we drew through everything that had to do with the lawyer and not C.G., all of our stuff is a lot lighter and a lot less. My second point is as to rate. The court simply rejected that another attorney in this exact type of case, in this exact market, who's in this exact market all the time, is at a different rate. Counsel's rate was her standard rate at $250. If you look at her affidavits, they're rates in divorce, not in personal injury tort. This is a slip and fall case. There are no dead people here. This is not in some very, very expensive market. We're talking about a rate. And in fact, this is a plain personal injury case, so technically her rate on this case was zero because she didn't prevail. So we have to say, what is evidence of a reasonable rate? Evidence of a reasonable rate would be somebody who does this every day. That evidence is in this case. Or perhaps the average. That wasn't done. The court didn't do anything other than say, I find it reasonable. Now, granted, there's certainly plenty of people who say that as long as it's within the two edges, it could be considered reasonable. The job of this court, I think, in deciding both proportionality and in rates and things like that, is to bring decisions within the standard deviations. This case, by anybody's means, the way it is structured and against the individual it is structured, is out on the edge of standard deviation. It is, in my view, out on the edge past abusive discretion. Is there something between what was awarded and zero that would be within discretion? I think so. But that's not my job. My job is to simply demonstrate that this award is an abuse of discretion because no reasonable person would do that. This court would not typically, and I know you as judges do not like to say we're going to second guess the credibility of the individuals. The magistrate decided the conduct of C.G. was intentional. I argued against it. I see it very unlikely that this court is going to do anything with that. But the reality of the situation is there's no good explanation for tossing my rate in the trash compared to her rate. There is no good explanation. Of course, you deny there was any misconduct. I'm sorry, Judge? You deny that there was any misconduct. It is my belief that his conduct is not sanctionable conduct, and if you trace the motions and the relief sought to the activity, they're not straight enough. They don't go. Is there one motion? Yes. Was there some meet and confer? Yes. Do they match up? No. I can't stand in front of you and argue, I think, because of the way this court looks at the opinions of the magistrate and say I think that was unreasonable. I think it was unreasonable. I don't expect you to change your mind or change that. So I go to the two things that I think are easily identifiable as unreasonable, as not what would be, and as legitimate error. Ms. Edwards? Good morning, judges. I'm April Edwards here on behalf of Angel Houston, Napoli, and may it please the court. What Mr. Kalamaris urges this court to do is to disregard the law. There's no abuse of discretion that he's pointing to. Could you speak louder? Certainly. There's no abuse of discretion by the district court that he's pointing to. And, in fact, the arguments that he's arguing to you today are not the arguments that they made at the trial court level, and they're not even the arguments that they highlighted and focused on in their briefs. They seem to be conceding today that C.G. was guilty of misconduct. They're just saying that the attorney was more guilty than C.G. And I would submit to this court that that is not what the record says. It was C.G. that, from the very beginning, resisted providing information. It was C.G. that testified falsely about documents. It's C.G. that produced documents and claimed they were the original documents. Counsel, you filed a cross appeal, and I can't figure out why. What is it you want on the cross appeal? The cross appeal centered around, well, first of all, the initial appeal we filed centered around the summary judgment motions, and we appealed that, and that was settled at mediation. The cross appeal issue that I initially was focused on was I felt that the district court should have sanctioned the attorneys and should have sanctioned C.G. I don't see any such argument in your brief. No. And your brief actually concludes by saying the judgment of the district court should be affirmed. That's not normally what you expect in a cross appeal. And that is true, Your Honor, and that's the reason. So why don't you just dismiss the cross appeal? And it was, as I understand it, dismissed. I was asked to file… It's still alive in this court. I was asked to show cause why it should not be dismissed. I filed a response, Your Honor, with all due respect, saying that the entirety of our arguments were related to the sanctions issue. Mr. Kalamudis moved to strike my reply brief. If you file a motion to dismiss, we will try to clear up our docket. So I did not end up continuing to pursue that. Even though I felt there was good cause to do so, I was focusing on the affirmance of the district court. Returning, if I may, Your Honor, to the issue that they now urge this court to do is to say it's all about proportionality. C.G. was the one that committed these acts. Yes, the attorney's behavior, the attorney sending out documents knowing that his clients just created those documents and not saying that they were just created and acting like they were the real ones. Yes, all of that's egregious. But it was the entirety of not just C.G.'s actions and the attorney's actions that resulted in this, what I consider to be the worst discovery violations I've ever seen in 20-plus years of practicing law because it wasn't a repeated supplement as they attempt to recast it in. They resisted providing things from the very beginning, not responding to the subpoenas, not objecting to the interrogatories and production of documents. It wasn't until I got court orders, had discovery conferences and got court orders that they began to provide information related to the identity of the guards and how to contact the guards. And it wasn't until I filed my first motion for sanctions on July 10th that they ever even bothered to go out to the storage locker to look for the documents I'd been requesting since December before. So if I hadn't filed the discovery motions, if I hadn't pursued court orders, if I hadn't filed the motions for sanctions, they would have never produced the documents. And ultimately, it was not until fully December of that year that the truth came to light about the documents being created in the course of the litigation by the attorneys, by the C.G., and ultimately being passed off as documents. Yes, was there much more as far as discovery misconduct? Did they cancel depositions at the last minute for no reason? Did they make inappropriate instructions, objections, instructions not to answer? Absolutely. But this permeated and infected the discovery process. It required hours and hours and hours of unraveling what was going on here. So I think the district court and the magistrate were entirely correct. They were the ones with the boots on the ground that were intimately familiar with what was going on and who was at fault, and they rolled the way they rolled. With respect to the second part that Mr. Calamares raises, which is as to the rate, he says that there was no good explanation for tossing his rate in the trash. He again asked this court to deviate from what the law is, and that is that it is not based on what Mr. Calamares is getting after he enters his appearance, after all of this is just after the motions for sanctions was granted. It should not be that rate. The law says it should be the reasonable hourly rate for myself, for a person practicing in this area. Yes, excuse me. And $250 is what I charge per hour. It's true that in person I've done quite a great deal of litigation, and we work on contingency fee basis generally. But in other matters, not just divorce, but contract cases, defense cases, criminal defense cases, my standard hourly rate was $250 an hour, and I believe that the court should follow the law with respect to what a reasonable rate is. The district court found it to be reasonable. Quite frankly, Mr. Calamares, other than him saying that the court should have applied his hourly rate, he doesn't really cite to any other reason, and I don't think that makes it unreasonable on the part of the district court in the finding. Clearly, if you look at Judge Lawrence's order, he looked at all of their arguments related to fees and hours, and some of them he found persuasive. And he did cut the hours I submitted, and he made modifications accordingly. With respect to this issue, I think he was on solid ground, and it's certainly not an abuse of the discretion to find as he did. With respect to the one other issue I just wanted to briefly touch upon, and it was one of the issues that they have really made as a primary argument in their brief, and that was that I didn't comply with procedural requisites before filing these motions. Number one, at the district court level, they did not even argue with respect to my second and third motions for sanctions. They never argued that I failed to meet the procedural requisites. It was only with respect to the first motion that they raised that issue at the trial court level. And as Judge Lawrence noted in his order, they never specifically identified the local rules that they were saying I violated. He assumed it was Local Rule 7-1 and Local Rule 37-1, even though they didn't specifically identify it. And he considered that, and he said, no, she has met the requisites, and I find that argument not to be persuasive. Most notably with respect to Local Rule 7-1, that doesn't even apply. It only applies to efforts to confer and work things out with respect to three things,  a motion for sanctions under Federal Rule 11 and a motion to disqualify. I never filed a motion for attorney's fees, number one. I never filed a motion for sanctions under Rule 11, and of course a motion to disqualify doesn't even apply here. With respect to the, I proceeded under Rule 37 for my motions for sanctions, and originally I requested a default judgment or an adverse inference. It was Magistrate Lynch, McVicker Lynch, that made the decision that those would be too harsh given the court's summary judgment rulings as to the Hyatt, and that she found the appropriate remedy to be attorney's fees and costs, and she felt that it should be a meaningful sanction, and that is something that Judge Lawrence adopted as well. So Local Rule 7 doesn't even apply here. Local Rule 37A does not say that a court cannot grant a motion for sanctions if there's not a certification of the conferring, meeting and conferring. It just says the court may deny any such motion if that's not contained in there. I would submit to you that I not only did meet and confer, and my motions do meet the procedural requisites, but the local rules that they argue should not be persuasive in reversing the court's decision. And if the court has no other questions? Okay, thank you very much, Ms. Edward. Mr. Colomaro, do you have anything further? Just a couple of things, Your Honor. One thing is this court's aware that just because I pick my battles in oral argument doesn't mean I concede things. Secondly, I think it's very important to listen to what counsel used as rewarding, the entirety of the circumstances. The entirety of the circumstances is the combined behavior of CG and its counsel. That's not what the sanction was supposedly about. And that's my problem, is that you cannot get up and argue about this case without talking about the conduct of the lawyers. And she didn't ask until we got into the cross-appeal. Judge 37 is the docket number that dismisses all that. She did not ask for that sanction at the trial court level. The trial court went out of its way to say that the sanction against CG was not for that behavior. And yet every time we hear it, the argument is, in fact, inclusive of that behavior. And that's the internal inconsistency. And that's the disproportionateness that I'm talking about. Your Honor, when I say I don't expect this court to go back and decide whether or not CG's conduct was malicious or just not very bright or accidental, I know that because I've read enough of the opinions just between the collective three of you. But I do know that you all hold lawyers responsible as opposed to clients and clients responsible as opposed to lawyers. And if we have a clean record and docket below, which we don't in this case, remember there was only one order, not a bunch of orders, one order, about one type of documents. There were no motions about the quality or the arguments of how counsel behaved or what interrogatories were good. The subpoena was served before this lawsuit was even filed. We're not responsible for the docket to be perfect. And the movement is. And my job is simply to say no reasonable person would have found exactly this way. And I ask the court either to adjust this on its own or remand for proceedings consistent with what I've talked about. Reverse remand. Thank you. Okay, well, thank you very much to both counsel. And the court will be in recess. Thank you.